ADDISON,
*January,*
1843.

Cutter &
Montague
*v.*
Adams.

CUTTER & MONTAGUE *v.* HIRAM ADAMS.

In an action for a false and fraudulent representation, by reason whereof credit is given for goods sold, it is sufficient to allege the substance of the representation, without attempting a literal recital.

The same amount of evidence is not necessary, in such a case, as in a criminal prosecution.

A declaration, that defendant represented in substance, that a purchaser of goods, was a fit person to be trusted, and that goods might be safely sold to him on credit, is not supported by proof, that defendant said he was doing a fair business.

THIS was an action, on the case, for the false and fraudulent representations of defendant, to plaintiffs, on a sale of goods, by them, to one Hiram Ferris, in October, 1839, in relation to the circumstances of said Ferris. The declaration contained three counts on the false and fraudulent representations, to which was added a count in trover, for the same goods.

The first count alleged, that, defendant said "he knew the 'said Hiram Ferris, and had done business with him, and 'had sold out to him his stock in trade, and that said Ferris, 'was then doing a good, safe, and profitable business, at Ver- 'gennes, Vermont, and was well worth about four thousand 'dollars, and that he was perfectly good, and responsible, for 'all goods he might wish to purchase."

The second count alleged, that the defendant "asserted 'and represented, to the plaintiffs, in substance, that they 'might safely trust, and give credit, to the said Hiram Ferris, 'in that behalf," &c.

Allegation in third count, same as in second, except, that the false representation was made to plaintiffs' agent.

Plea, general issue, and trial by jury.

The only direct evidence the plaintiffs offered, in relation to the false and fraudulent representations, was the testimony of Edward Smith, who testified, that, on the 22d day of October, 1839, he was a clerk in the plaintiffs' store, in the city of New York, and that, on that day, Ferris called at said store and selected some goods—some more on the 23d, and in the forenoon of the 24th, finished selecting, and laying out, the goods he wished to purchase—the whole amount being $1,587.32.

The witness further stated, that the mode in which Ferris

Addison,
January,
1843.

Cutter &
Montague
*v.*
Adams.

selected and laid out the goods, excited the suspicions of the plaintiffs, and they directed the witness not to sell and deliver the goods to him, without more satisfactory information as to his solvency, and specially directed the witness to make inquiries of the defendant, to whom the witness had, on previous inquiry as to Ferris' situation, been referred. The witness further testified, that, at noon, on the 24th day of October, 1839, he met the defendant, at Howard's Hotel, in New York, told him that Ferris was desirous of making a purchase of goods of plaintiffs, of twelve hundred dollars or more, and inquired as to his responsibility and credit, and that the defendant replied, that he was worth four or five thousand dollars, was doing a good and safe business, that himself and brother had sold him out their stock of goods the spring before, amounting to about five thousand dollars, and that their debt for the goods, would not become due until after the goods Ferris was about purchasing of plaintiffs, would fall due, and would not interfere with his paying for them. The witness further testified, that, upon communicating this information to plaintiffs, they directed him to go on, and deliver the goods to Ferris, and that they were delivered solely on defendant's said representation.

The plaintiffs, also, offered evidence tending to prove that Ferris never was worth anything ; that, though he pretended to purchase out the defendant and his brother's store of goods, in the spring of 1839, and do business through the the summer in his own name, yet, that he had paid nothing for the goods ; that he had lost considerable sums during the summer of 1839, in the purchase of produce ; that two or three days before the making of said representation, he had been sued in New York for a debt for goods, and that, defendant had, within two or three days previous, become responsible for him, in New York, for some four or five thousand dollars ; that all these facts were well known to the defendant at the time of making such representation, and that no allusion, whatever, was made to them, by him, when he made the representation to Smith, nor had the plaintiffs any knowledge of them.

The plaintiffs also gave evidence tending to prove, that, within a few days after the goods arrived at Vergennes, Ferris transferred all his goods, notes, and accounts, to the

defendant—the defendant agreeing to pay some portion of
Ferris' debts, but not the plaintiffs' ; that Ferris was utterly
insolvent, and that no part of plaintiffs' debt had been paid,
or could be collected of him.

ADDISON,
January,
1843.

Cutter &
Montague
v.
Adams.

Among the witnesses introduced by the defendant, was
Ferris, who testified, among other things, that the goods
were wholly purchased on the 22d and 23d of October,
1839 ; that before noon of the 24th of October he had left
the plaintiffs' store for the last time, and that when he left, it
was understood the plaintiffs were to forward the goods, and
that part were boxed before he left the store.  Smith in his
testimony swore the goods were not boxed until after Ad-
ams made the representation.

The defendant, also, offered one Chapman, who testified
that he was present and heard Smith inquire of Adams
about Ferris ; and that Adams told Smith, his means were
small, that he was doing a fair business ; and, on Smith's
inquiry if Ferris had any means, or income, except from his
trade as a merchant, Adams told him, that his wife and chil-
dren would inherit, from her father's estate, five thousand
dollars, and that Ferris would have the use of it; and that
the above was all the conversation which passed on the
subject, at that time.

The defendant, also, offered L. B. Fillmore, who testified
that Smith, a few weeks after the sale of the goods to Fer-
ris, called on Adams, and that, at one time when he called,
he asked Adams what he was going to do about those
goods ; and that he, Adams, asked Smith if he had ever
bought any goods of him, on his own account, or ever
recommended any one to buy any of them—to which Smith
answered, that he had not ; and Adams then asked Smith
why he came to him, and Smith said, that, as he had the
goods, he ought to pay for them.   Plaintiffs offered evidence
of Smith's general good character, and, also, that Ferris'
wife, who was the sister of defendant, died in 1832, leaving
children by Ferris.

The defendant's counsel requested the court to charge
the jury, that, to entitle the plaintiffs to recover, they should
have the same amount of testimony as would be necessary if
Adams was prosecuted, criminally, for the offence ; and that,
at all events, they could not recover, on any testimony less

than that of one, unimpeached witness ; and, as Smith's testimony was impeached, in this particular case, by Chapman's testimony, and evidence of general good character did not, and could not, restore him, so that his testimony would be entitled to the same effect it would have, if it was uncontradicted, with respect to this particular conversation, it was insufficient to entitle the party to recover.

The court were, also, requested to charge, that, if the sale of the goods was complete, so as to pass the property, though the goods still remained in the plaintiffs' store, the defendant would not be liable, as it could not be said that the goods were sold on his, the defendant's representation.

The court were, also, requested to charge the jury, that, it was necessary for the plaintiffs to prove the false allegations laid in the counts, which counted on a fraudulent representation ; and if the representations were such as Chapman stated, they would not support the declaration.

The court, however, instructed the jury, that this was a civil action, and to be governed by the same rules of evidence as other civil actions, and they would return their verdict upon a fair balance of evidence ; and that, as to the testimony of Smith, it was purely a question of credit, which belonged exclusively to the jury ; and that, if they believed his testimony, they would give it effect accordingly ; and that, in determining the credibility of this witness, they would carefully consider, on the one hand, how far he was impeached, and, on the other hand, how far he was sustained.

The court charged the jury, that, if the goods were delivered to Ferris, in consequence of the representation made by the defendant, the plaintiffs trusting therein, it was all that the law required in this particular.  And as to the fraudulent allegations in the plaintiffs' declaration, the jury were told that it was incumbent upon the plaintiffs to prove them substantially as alleged.  The jury returned a verdict for the plaintiffs, and the defendant excepted.

*Tucker, Linsley & Woodbridge,* for defendant.

I. In an action for a fraudulent recommendation, the words which are claimed to have been used to perpetrate the fraud, are matter of substance, and the same principles should apply as in slander.  In both cases the words must

be false, and must be used, *malo animo*, and damages must result. The falsehood of the words lying at the foundation of each action, every reason requiring particularity and precision in the allegations in the one case, apply, with equal force, in the other. The strictness required in slander rests on the ground that the action, being for words, the words used are the foundation and gravamen of the complaint. And the leading cases seem to proceed on the ground that the declaration must be proved as laid. See *Paisley* v. *Freeman*, 3 Term R. 51 ; *Haycraft* v. *Creasy*, 2 East. 107 ; *Topp* v. *Lee*, 3 Bos. & Pul. 367 ; *Eyre* v. *Dunsford*, 1 East. 318. The testimony in this case does not support the declaration, as is sufficiently apparent on a comparison of the proof, stated in the record, with the allegations in the several counts. The plaintiffs are not aided by saying that defendant, in substance, represented, &c. ; for if this form of declaring could be tolerated in this action, yet the true and real sense and spirit of the expressions must be given. In slander, this form of declaring is rejected as loose and unsatisfactory, and no good reason appears why the same rule should not prevail here.

II. The charge is erroneous, in not instructing the jury what was necessary to be proved, and what words would, and would not, support the declaration. In an action for slander, if there is a question of variance raised, it is the rule of the court, to instruct the jury with regard to the particular proof offered, pointing out what will, and what will not, support the declaration ; and even in assumpsit, on a question of variance, the court must decide what is a variance. *Durkee* v. *Mahoney*, 1 Aik. 116 ; *Mott* v. *Mc-Niel*, 1 Aik. 162.

III. If Chapman's account of the words used, was true, no point of the declaration was proved ; and hence the defendant was entitled to explicit instructions on that point. Instead of this, the jury were left with the single direction, that plaintiff must prove the fraud substantially, as alleged.

The counsel for the defendant further cited the cases of *Briggs* v. *Georgia*, 12 Vt. R. 60 ; *Lindsay* v. *Lindsay*, 11 Vt. R. 626 ; *Mason* v. *Silver*, 1 Aik. R. 367 , *Fletcher* v. *Howard*, 2 Aik. 115 ; *Smith* v. *Carrington*, 4 Cranch, 62 ; *Brainard et al.* v. *Burton*, 5 Vt. 97.

ADDISON,
January,
1843.

Cutter &
Montague
*v.*
Adams.

ADDISON,
January,
1843.

Cutter &
Montague
v.
Adams.

*J. Maeck* argued for plaintiff.

The opinion of the court was delivered by

ROYCE, J.—It is contended that the plaintiffs were not entitled to recover, admitting the representation to have been made precisely as the witness, Smith, stated it. And the objection is, that, in this kind of action, the representations proved should correspond as literally and fully with those alleged in the declaration, as is required in an action for slanderous words.

If there is any such analogy as the objection supposes, it is only because the plaintiffs' injury, in both cases, results from declarations wrongfully made by the defendant. Intrinsically the two actions have little or no resemblance. In slander the ground of action is the injury resulting from impaired reputation ; whereas, in actions of the present class, pecuniary injuries only, are to be redressed. The injury in one case is effected by a groundless and malicious attack upon the plaintiff's character ; in the other by deceit, operating to mislead him to his prejudice. In the one case the damage sustained is not supposed to result from any agency of the plaintiff himself; in the other, his own misguided act has occasioned it. It may be added that, according to the forms of declaring, furnished by Mr. Chitty and other approved authorities, it is allowed, in this sort of action, to allege the substance of the representation, without attempting a literal recital. This is a license not permitted in the action of slander. Stark. Sl. 266 ; *Newton* v. *Stubs,* 3 Mod. 71. But should the proposition contended for, be granted, it would not warrant the conclusion assumed. It is not required, in slander, that the identical expressions charged should be proved, and much less that they should all be proved ; it is enough that words of the same import are proved, and that, to a sufficient extent, to show a legal cause of action. In this view, there can be no doubt that the testimony of Smith sufficiently tended to support the declaration.

The remaining questions arise upon the charge of the judge. We think his instructions, in reference to Smith's testimony, were unobjectionable. The testimony of Chapman and Fillmore tended to impeach the witness, and the evidence of his good character tended to support him. Under

Addison,
*January,*
1843.

Cutter &
Montague
*v.*
Adams.

such circumstances it became, as the judge remarked, a mere question of credit; and the jury were properly left at liberty to act upon the testimony of Smith, if they thought the impeaching testimony had been fully counteracted.

As the cause on trial was neither a criminal prosecution, nor an action of a criminal nature, the judge was, also, warranted in charging that the plaintiffs would be entitled to a verdict, if a fair balance of evidence should be found in their favor.

The defendant requested instructions to the jury, that if the representation was as Chapman had stated it, the plaintiffs were not entitled to recover. The charge was: "that if the goods were delivered to Ferris in consequence of the representation made by the defendant, the plaintiffs trusting therein, it was all that the law required in this particular; and as to the fraudulent allegations in the declaration, it was incumbent upon the plaintiffs to prove them substantially as alleged." In passing upon this part of the charge, it is to be borne in mind, that but a single representation had been made; and this must be taken to have been as Smith had stated it, or as Chapman had stated it. And though it may be more probable that the jury proceeded upon the former than the latter statement, it is not certain, upon the record, that they did so. The statement of Chapman is now claimed, in argument, as sufficient to support the action, and, for aught appearing in the case, it may have been so claimed at the trial; indeed, the defendant's request for a charge in reference to that statement, renders the fact probable. And since the judge did not distinguish between the two statements, the defendant has a right to insist, that the verdict for the plaintiffs may have been found upon Chapman's statement. This raises the question whether, under their present declaration, the plaintiffs were entitled to recover upon the representation as given by Chapman.

It is not, strictly, a question of variance, but rather a question as to the extent of proof. And unless the representation, as stated by Chapman, tended to prove the substance of some one count in the declaration, the judge committed an error in declining to charge, as requested. Now the only clause in the testimony of Chapman which seems to have tended, even in substance, to support any averment in

ADDISON.
January,
1843.

Cutter &
Montague
v.
Adams.

the first count, was the defendant's declaration that Ferris was " doing a fair business." But this, being preceded by the remark that his means were small, did not satisfy Smith, who immediately inquired if he had other means aside from his business.   It can scarcely be pretended that the defendant's reply (concerning the property in expectancy for the wife and children of Ferris) had a tendency to prove the alleged assertion that he was worth five thousand dollars.

I shall next inquire whether this testimony had a proper tendency to prove the second and third counts in the declaration.   Here the allegation is, that the defendant asserted and represented, in substance, that Ferris was a fit person to be trusted, and the plaintiffs might safely sell him goods on credit.   As no limitation is expressed, an indefinite, or general, credit is to be understood ; such a credit as Ferris, in his business as a country merchant, might think it beneficial to ask, or, perhaps more properly, such credit as most merchants in the country are accustomed to receive.   The question is, whether it should have been inferred, as the natural and obvious import of the defendant's conversation, as detailed by Chapman, that Ferris was a fit person to receive such a credit.   And as a means of testing the correctness of such an inference, we may suppose the statement of Chapman to have been declared upon as he gave it, and the representation alleged in these counts to have been subjoined by way of *innuendo*.   It would then be required, that the representation so declared upon should justify and support the *innuendo* which professed to allege its meaning. The case of *Gainsford* v. *Blackford*, 6 Price, 36, and 7 Price, 544, furnishes an illustration.   The declaration set forth that the defendant, on being inquired of, as to the circumstances of a person asking credit of the plaintiff, said that he had been paid a debt due to himself from that person, and that he was ready to give him credit for any thing he wanted.   It was held that this *colloquium* did not support an *innuendo* alleging the meaning to be, that such person was in good circumstances, and fit to be trusted, generally, with goods, on credit.   In the case cited, the defendant was doubtless guilty of insincerity and fraud, because he knew that the person referred to had recently obtained his discharge under the insolvent laws.   The case

is, therefore, not to be understood as deciding that the plaintiff was without remedy against the defendant, but only that he had assumed to construe the defendant's words in a sense beyond their appropriate meaning. We think the same should be said of the second and third counts of the present declaration in reference to the testimony of Chapman. That testimony does not, in our opinion, sustain the general and unqualified allegations of those counts. The result is, that the defendant was entitled to the charge requested. Were the averments in the declaration properly adapted to such a case as this testimony tends to make out, the rights of the parties would rest upon grounds not affected by the present decision.